Joseph RELEFORD *v.* PINE BLUFF SCHOOL DISTRICT NO. 3

03-613 140 S.W.3d 483

Supreme Court of Arkansas
Opinion delivered January 8, 2004

■

*Mitchell, Blackstock, Barnes, Wagoner, Ivers & Sneddon, PLLC,* by: *Marcia Barnes,* for appellant.

*Ramsay, Bridgforth, Harrelson & Starling LLP,* by: *Spencer F. Robinson* and *J. Jarrod Russell,* for appellee.

Tom Glaze, Justice. Appellant Joseph Releford, a public school employee, was employed by the Pine Bluff School District as the lead foreman of a custodial crew from July 1, 1999, through June 20, 2000. On June 5, 2000, the district's superintendent, Frank Anthony, notified Releford by letter that Releford was being suspended without pay beginning June 5, 2000, for neglect of duty, misconduct, and insubordination. In his letter, Anthony did not recommend termination or nonrenewal of Releford's contract. On June 15, 2000, Releford requested a hearing before the district's school board, and, although Releford was not provided notice of a hearing and apparently did not appear, the school board met and sustained Releford's suspension on July 12, 2000.

Releford subsequently filed suit against the district, alleging that the district breached Releford's contract when it failed to provide him a hearing required by the Arkansas Public Employee Fair Hearing Act ("the Fair Hearing Act"), codified at Ark. Code Ann. § 6-17-1701, *et seq.* (Repl. 1999). The District moved to dismiss Releford's complaint, contending Releford was not entitled to a hearing under the Fair Hearing Act. Relying on the case of *McGough v. Pine Bluff School District,* 79 Ark. App. 235, 85 S.W.3d 920 (2002), the trial court ultimately agreed with the

District's argument and dismissed Releford's complaint. Releford brings this appeal, continuing his contention that the Fair Hearing Act applies to any suspension — not solely one that is a part of a school superintendent's recommendation to either terminate an employee or nonrenew an employee's contract. We hold the decision reached by the trial court was correct, and we affirm.

■ ■ Our review of this case largely centers on the provisions of the Fair Hearing Act. This court first considered this Act in the case of *Small v. Cottrell*, 332 Ark. 225, 964 S.W.2d 383 (1998), but that case was mainly limited to whether the Act required strict or substantial compliance when applying its provisions. The *Small* court pointed out that, while the somewhat comparable Teacher Fair Dismissal Act specifically required strict compliance of its terms when providing notice and a hearing before deciding a teacher's nonrenewal, termination, or suspension, the Fair Hearing Act, which covers public school employees, *omitted* any mention of the words "strict compliance" when considering such procedural requirements in termination, nonrenewal, or suspension matters.[1] In *Small*, this court followed our settled rule that when reviewing a statute, we first look to the plain language of the statute, and, when the language is clear and unambiguous, it will follow the plain meaning of the words rather than interpreting it. *Id.* at 230-231. Our court in *Small* concluded that the cases requiring strict compliance with regard to the Teacher Fair Dismissal Act did not apply in Fair Hearing Act cases, absent the General Assembly's express directive. Therefore, the court held substantial compliance is the proper standard under the Fair Hearing Act. In reaching that holding, this court added the following:

> It is clear that the General Assembly promulgated the [Fair Hearing] Act to protect noncertified school employees' rights to notice

---

[1] *See* the Arkansas Teacher Fair Dismissal Act, Ark. Code Ann. § 6-17-1503 (Repl. 1999), which provides:

> A nonrenewal, termination, suspension, or other disciplinary action by a school district shall be void unless the school district *strictly complies* with all provisions of this subchapter and the school district's applicable personnel policies.

(Emphasis added.)

and opportunity to be heard by a reasonable hearing procedure *when termination or nonrenewal is imminent.*

*Id.* at 231. (Emphasis added.)

This court's foregoing statement in *Small* is consistent with the plain language set out in the text of the Fair Hearing Act, § 16-17-1703, which reads in pertinent part as follows:

> (a) The *superintendent* of a school district *may recommend termination* of an employee during the term of any contract *or* the *nonrenewal* of a full-time nonprobationary employee's contract provided that he gives notice in writing, personally delivered, or by letter posted by registered or certified mail to the employee's residence . . . .

> \* \* \*

> (c) Such written notice shall include a statement of the reasons for the proposed *termination or nonrenewal.*

> (d) The notice shall further state that an employee being *recommended for termination or . . . for nonrenewal is entitled to a hearing* before the school board upon request provided that the request is made in writing to the superintendent within twenty-five (25) calendar days from receipt of the notice.

(Emphasis added.)

Moreover, § 6-17-1705 of the Fair Hearing Act specifically sets out the parameters of a hearing. Provisions (c) and (d) of the statute determine which party will bear the expense for the record of a hearing involving either termination or nonrenewal. The Act makes no mention of hearings and their costs involving suspensions. It follows that the Act simply does not contemplate hearings where only suspensions are imposed.

In keeping with the clear terms of § 6-17-1703 and 6-17-1705, a school employee is entitled, under the Fair Hearing Act, to a hearing before the school board *if the superintendent recommends termination or nonrenewal of the employee's contract.* Once again, the Act's provisions make *no mention* that a hearing is required before the school board if the superintendent merely

suspends an employee as a disciplinary measure while withholding any recommendations for the employee's termination or nonrenewal.[2]

Our review of these statutory provisions of the Fair Hearing Act also is consistent with the General Assembly's expressed intent in the Act's preamble which provides that it is "an Act *to provide for a hearing for* classified *school employees when being recommended for dismissal.*" (Emphasis added.) In short, Releford reads language into the above statutory provisions that is not there. Once again, we point out that the Fair Hearing Act simply provides no requirement that a hearing is required when only a suspension is in issue.

■ In another attempt to bring Releford's suspension within the Fair Hearing Act, he cites to Ark. Code Ann. § 6-13-620(a)(4)(A), (a)(4)(C), and (a)(4)(A)(8) (Supp. 2003). However, upon examining § 6-13-620, one finds statutory provisions pertaining to the district boards of directors, and while the statute mentions the boards' powers and duties generally, it makes no reference to whether an employee's pay can be stopped when the superintendent placed the employee on suspension. Nonetheless, Releford argues that the superintendent had no authority to stop an employee's pay, asserting that only the Board of Education had such authority. The language in § 6-13-620 simply does not read the way Releford suggests. Releford goes outside the Fair Hearing Act in an attempt to supply language not found in the Act. Again, the Fair Hearing Act provides hearings only in situations involving a school employee's termination or nonrenewal. If the General Assembly desires to broaden the law to require hearings for suspension-only cases, it is capable of doing so.

■ Before leaving this point, we address Releford's argument that, while a superintendent has authority to place a teacher or a non-certified district employee on suspension, only the school

---

[2] We note that Releford cites §§ 6-17-1703(d) and -1704(b), and suggests that the hearing request procedure is the same as for a recommended termination or nonrenewal. However, neither § 6-17-1703(d) nor § 6-17-1704(b) provides that an employee is entitled to a hearing when a superintendent merely *suspends* an employee. The most that can be said for these statutes, including Ark. Code Ann. § 6-17-1705, is that, when an employee has been provided a hearing on termination of his or her contract, the school board may either terminate or continue suspension of the employee.

board may continue a suspension for any definite period of time, and the employee cannot lose compensation without action by the board. For this proposition, Releford cites to §§ 6-17-1508(e), -1704, and -1705(e). First, we note that § 6-17-1508(e) is a statute applicable to suspensions or terminations of teachers, and no comparable provision is found in the Fair Hearing Act. Second, as discussed immediately above, the language in §§ 6-17-1704 and -1705 only provides for a hearing in termination or nonrenewal cases, and is inapplicable to the situation now before us.

 Finally, we point out that a public school employee is not without a remedy if he or she disagrees with a suspension that does not warrant termination or nonrenewal.[3] Here, the appellee, Pine Bluff School District No. 3, posits that an aggrieved employee may file a grievance under the personnel policies promulgated under Ark. Code Ann. § 6-17-208 (Supp. 2003). In fact, § 6-17-208(b) allows all school employees to challenge or appeal any disciplinary actions or other grievances through the administration and may eventually appeal to the school board. Under § 6-17-208(a)(2)(A), a "grievance" is broadly defined as "any concern related to personnel policy, salary, federal or state laws and regulations, or terms or conditions of employment raised by an employee."

For the reasons stated above, we affirm the trial court.

DICKEY, C.J., and IMBER, J., not participating.

---

[3] As we mentioned in the beginning of this opinion, the trial court appears to have relied on the case of *McGough v. Pine Bluff School District,* 79 Ark. App. 235, 85 S.W.3d 920, but because that decision involved a school counselor, the Teacher Fair Dismissal Act and procedures not found in the Fair Hearing Act in issue here, we simply do not find that case in any way controlling here. Nevertheless, the trial court's decision can be affirmed if it is correct for another reason. *HRR Arkansas, Inc. v. River City Contractors, Inc.,* 350 Ark. 420, 429, 87 S.W.3d 232, 238 (2002).